UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALBERT RIVERA,

                    Plaintiff,

          -against-

MARK ROYCE, SUPT. OF GREEN HAVEN
CORR. FACILITY, et al.,

                    Defendants.

---

**MEMORANDUM OPINION
AND ORDER**

19-CV-10425 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Plaintiff Albert Rivera ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Superintendent Mark Royce ("Royce"), Deputy Superintendent of Security Anthony Russo ("Russo"), Captain Norton ("Norton"), Correction Officer Tracy Ott ("Ott"), and Correction Officer Jhandry Zevallos ("Zevallos," and collectively, "Defendants") for violating his constitutional rights while he was incarcerated at Green Haven Correctional Facility ("Green Haven") in Stormville, New York. (*See generally* Doc. 38, "SAC"). Specifically, Plaintiff alleges that Defendants violated his Eighth and Fourteenth Amendment[1] rights, along with rights secured by the New York State Constitution, by failing to protect him from an attack by another inmate and, thereafter, placing him in Involuntary Protective Custody ("IPC") for approximately 142 days. (*See generally, id.*).

---

[1] Plaintiff's conditions of confinement claims are governed by the Eighth Amendment because he is a convicted prisoner. First, Plaintiff pled affirmatively that he was a "state prisoner" incarcerated at Green Haven. (SAC ¶¶ 1, 6). Second, the documents annexed to the SAC provide Plaintiff's Department Identification Number or "DIN." (*E.g.*, *id*. at pp. 12-13 ("SAC Ex. A")). Searching Plaintiff's DIN (16-A-4080) on the New York State Department of Corrections and Community Supervision ("DOCCS") inmate lookup website, Plaintiff was convicted of Manslaughter in the First Degree, was received by DOCCS in October 2016, and is currently serving a sentence with an aggregate maximum of fifteen years. *See Simmonds v. Family Dollar Store*, No. 18-CV-1241, 2018 WL 5447046, at *1 n.1 (E.D.N.Y. Oct. 25, 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information."); *Jackson v. Sullivan Cty.*, No. 16-CV-3673, 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018).

Defendants filed a motion to dismiss the SAC, the operative pleading, on December 28, 2020. (Doc. 43; Doc. 44 "Def. Br."). Plaintiff did not file his opposition; rather, Plaintiff mailed his opposition to Defendants' counsel who, thereafter, filed it with the Court on February 17, 2021 as an attachment to a letter. (Doc. 50-1, "Opp."). The motion was briefed fully with the filing of Defendants' reply memorandum of law in further support of their motion to dismiss on March 15, 2021. (Doc. 52, "Reply Br.").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## **BACKGROUND**

Plaintiff alleges that at 6:40 p.m. on October 11, 2019, while incarcerated at Green Haven, he was assaulted in the recreation yard by a then-unknown inmate wielding an unidentified weapon. (SAC ¶ 13). As Plaintiff tried to protect himself, he heard unidentified officers yell, "Stop fighting[!]" (*Id*. ¶ 17). Plaintiff disengaged from the fight and walked toward two officers—Ott and Zevallos—"for protection." (*Id*.). Upon reaching the officers, Ott told Zevallos to "restrain" Plaintiff; Ott, in turn, tried to restrain the assailant. (*Id*. ¶ 18). Zevallos did not restrain Plaintiff physically, but, rather, stood beside him. (*Id*. ¶ 19). Ott, in a similar fashion, simply instructed the attacker to put his hands in his pockets as she walked him away. (*Id*.). Of note, Plaintiff alleges that Ott walked behind the other inmate. (*Id*.).

It was at this juncture that the attacker revealed a weapon—presumably the same weapon used during the initial encounter—lunged at Plaintiff, and yelled, "I'm gonna kill you[!]" (*Id*. ¶ 22). Although Zevallos unholstered his pepper spray, he did not discharge it. (*Id*. ¶ 21). Plaintiff claims that, as his attacker charged, both Zevallos and Ott "jump[ed] out of the way, allowing the inmate assailant to stab and cut [him] three (3) times." (*Id*. ¶ 23). At this point, "an alarm sounded . . . [and a] response team" was "dispatched to the yard." (*Id*. ¶ 24). Plaintiff insists that neither

Zevallos nor Ott tried to intervene in the second attack. (*Id*.). After "the response team arrived," Plaintiff was taken immediately to the infirmary for treatment. (*Id*. ¶ 25).

The next day, October 12, 2019, Plaintiff was charged with four violations (fighting, refusing a direct order, creating a disturbance, and violent conduct). (*Id*. ¶ 26; SAC Ex. A). A hearing on these violations began on October 15, 2019, was adjourned, and then concluded on October 21, 2019. (*Id*. ¶ 27; *id*. at pp. 14-15 ("SAC Ex. B")). While that hearing was pending, on October 18, 2019, Norton approved a recommendation that Plaintiff be placed in IPC. (*Id*. ¶ 28; *id*. at pp. 18-19 ("SAC Ex. D")). On October 21, 2019, Plaintiff was adjudicated not guilty as to each violation and "immediately transferred to" IPC. (*Id*. ¶ 27). A hearing regarding Plaintiff's IPC placement was thereafter held on October 25, 2019, and the placement was confirmed. (*Id*. ¶ 29; *id*. at pp. 16-17 ("SAC Ex. C")).

The IPC placement was reviewed on February 12, 2020. (*Id*. ¶ 30; *id*. at pp. 20-21 ("SAC Ex. E")). According to that review, Plaintiff was held in IPC because he was "assaulted by inmates," had been "uncooperative with investigation," and his continued placement in IPC was necessary to protect him from unknown attackers. (SAC Ex. E). Plaintiff insists that officials knew who attacked him and, in fact, paperwork attached to the SAC identifies his attacker. (*Id*. ¶ 30; *see also* SAC Ex. A; SAC Ex. D). Despite the IPC placement review's recommendation that Plaintiff remain in IPC "until other suitable housing can be found," Plaintiff was released into the general population on March 11, 2020. (*Id*. ¶ 31; *see also* SAC Ex. D). This suit followed.

## STANDARD OF REVIEW

I.  Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate

it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

4

has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true

all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. Yet, the Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, "[w]here an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) (internal quotation marks omitted).

## ANALYSIS

I.  Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

The Court, as guided by precedent, turns first to Defendants' arguments regarding the lack of subject-matter jurisdiction and dismissal required under Rule 12(b)(1).

A. New York Correction Law § 24

Plaintiff "alleg[es] violations under Article I, § 5 of the New York State Constitution prohibiting Cruel and Unusual Punishment and treatment, a constitutional tort . . . ." (SAC ¶ 2). New York Correction Law § 24 provides, in pertinent part, as follows:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Corr. Law §§ 24(1)-(2).

"The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." *Sughrim v. New York*, No. 19-CV-7977, 2020 WL 7047697, at *21 (S.D.N.Y. Nov. 30, 2020) (quoting *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015)); *see also Brown v. Griffin*, No. 18-CV-5439, 2019 WL 4688641, at *8 (S.D.N.Y. Sept. 25, 2019) (dismissing claims for alleged violations of the New York State Constitution); *Davis v. McCready*, 283 F. Supp. 3d 108, 124 (S.D.N.Y. 2017) ("[U]nder Section 24, any tort claim arising under New York law . . . must be dismissed for lack of subject matter jurisdiction."); *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) ("Plaintiff's state law claims against Defendants . . . are barred because New York Correction Law § 24 shields them from liability for state law claims in both state and federal court.").

On the facts here, Plaintiff does not suggest that Defendants acted outside the scope of their employment. (*See generally* SAC); *see also Cruz*, 24 F. Supp. 3d at 310 (explaining that "[t]he test to determine whether the defendants' actions fall within the scope of their employment is whether the act was done while the servant was doing the master's work no matter how irregularly, or with what disregard of instructions" (internal quotation marks omitted)). Accordingly, because any state law claims against Defendants "would be barred in New York state courts, this Court equally lacks jurisdiction over the claims." *Hassell*, 96 F. Supp. 3d at 385. Plaintiff's claims under New York State law are, accordingly, dismissed.

### B. Eleventh Amendment

Insofar as Plaintiff seeks relief under 42 U.S.C. § 1983, the Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-7953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d

157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Consequently, because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, the claims for relief under 42 U.S.C. § 1983 are dismissed under Rule 12(b)(1) to the extent they seek relief against Defendants in their official capacities. This result does not affect the 42 U.S.C. § 1983 claims against Defendants in their individual capacities. The Court therefore considers Defendants' arguments for dismissal of those claims for relief under Rule 12(b)(6).

II. <u>Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted</u>

A. <u>Failure to Exhaust Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is "'mandatory': [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that

'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)). Compliance with the PLRA "is an affirmative defense, not a pleading requirement, and therefore a motion to dismiss for failure to exhaust may only be granted if it is clear from the face of the complaint that the plaintiff failed to exhaust" his administrative remedies. *See Gunn v. Beschler*, No. 16-CV-6206, 2020 WL 7398751, at *4 (W.D.N.Y. Dec. 17, 2020). Such clarity exists here with respect to Plaintiff's Eighth Amendment claims.[2]

Generally, as an inmate in DOCCS' custody, Plaintiff was required to follow a three-step process to exhaust the grievance process completely. *See generally Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining DOCCS' three-step grievance process). First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.4,

---

[2] Defendants, in support of their motion on this issue, submit three declarations with exhibits to establish that Plaintiff did not exhaust his administrative remedies: (1) two from Laura A. Stanaway, the Inmate Grievance Program ("IGP") Supervisor at Green Haven; and (2) one from Rachael Seguin, Assistant Director of the IGP and custodian of records maintained by the Central Office Review Committee ("CORC"). (*See* Doc. 44-1; Doc. 44-2; Doc. 52-1). These submissions were provided to the Court to establish Defendants' entitlement to the affirmative defense offered by the PLRA and substantiate the fact that Plaintiff did not file any grievances about the issues raised in the SAC. However, Plaintiff pled affirmatively: "As the issues herein do not involve claims that can be pursued through the inmate grievance system, no grievances were filed." (SAC ¶ 12). No clearer statement could be made about Plaintiff's decision to forego the grievance process; as such, even if the Court assumes that the documents may be considered properly at this juncture, they are simply unnecessary. Plaintiff likewise submitted five documents as attachments to his opposition brief. (*See* Opp. at 7-42). Given the liberality afforded *pro se* litigants, "in deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to his opposition papers." *Davis v. Cty. of Suffolk*, No. 18-CV-303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) (internal citations and quotation marks omitted), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). Of those five documents, only one— DOCCS Directive No. 4040—is arguably consistent with the allegations in the SAC, so the Court may consider it. The Court declines, however, to consider the four remaining documents. *See* discussion *infra*.

701.5(a)-(b). Second, should the inmate be dissatisfied with the conclusion reached by the IGRC, he may appeal that decision to the superintendent of the facility within seven calendar days of receiving the IGRC's determination. *Id*. § 701.5(c)(1). Finally, if the superintendent's conclusions are unfavorable, the inmate may appeal that decision to CORC within seven calendar days of receiving the superintendent's determination. *Id*. § 701.5(d)(1)(i). Both Green Haven's Superintendent and CORC are required to "date stamp all" grievances or appeals forwarded to them for review, *id*. §§ 701.5(c)(3), 701.5(d)(3)(i), and maintain files "for the current calendar year plus the previous four calendar years," *id*. § 701.6(k)(3).[3]

Plaintiff pled affirmatively in the SAC—a pleading with a signature line below a statement representing that the allegations were made "under [p]enalty of [p]erjury"—that he did not file a grievance concerning the claims pressed in the SAC because they were not grievable. (SAC ¶ 12, p. 11). Plaintiff's position that his Eighth Amendment claims could not be grieved is unavailing; indeed, the applicable regulations define "grievance" in pertinent part as:

> a complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedure or rule of the Department of Correctional Services or any of its program units, or the lack of a policy, regulation, procedure or rule.

---

[3] This procedure is not the same as that governing disciplinary hearings because there is "a separate and distinct administrative process for inmates to appeal the result of disciplinary hearings, which is not referred to as a 'grievance' process." *Morris v. Rabsatt*, No. 10-CV-0041, 2010 WL 4668440, at \*3 (N.D.N.Y. Oct. 18, 2010), *adopted by*, 2010 WL 4668328 (N.D.N.Y. Nov. 9, 2010); *see also Ortiz v. McBride*, 380 F.3d 649, 653-54 (2d Cir. 2004) (concluding that the plaintiff exhausted his administrative remedies with respect to his Fourteenth Amendment, but not his Eighth Amendment, claim); *Lev v. Thoms*, No. 19-CV-01387, 2019 WL 7067045, at \*4 (N.D.N.Y. Dec. 23, 2019) ("Plaintiff must follow the grievance process for his prison condition claims and the administrative appeal procedure for his Fourteenth Amendment Due Process Clause claims." (internal quotation marks omitted)); N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.3(2) ("[A]n individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable."). As the Court cannot conclude that Plaintiff did not exhaust the appellate process with respect to his Fourteenth Amendment claim from the face of the SAC—and Defendants do not address this issue— that claim is not dismissed for failure to exhaust administrative remedies. That claim is, however, dismissed for failure to state a claim. *See* discussion *infra*.

N.Y. Comp. Codes R. & Regs. tit. 7, § 701.2(a). Moreover, precedent bears out that the issues underlying Plaintiff's Eighth Amendment claims are grievable and must be exhausted administratively before filing an action. *See, e.g.*, *Ortiz*, 380 F.3d 649, 653-54; *Lurch v. Bui*, No. 19-CV-895, 2020 WL 8450543, at *4 (N.D.N.Y. Dec. 8, 2020), *adopted sub nom. Lurch v. Jones*, 2021 WL 392486 (N.D.N.Y. Feb. 4, 2021); *cf.* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(e) (outlining three categories of non-grievable issues).

Separate and apart from Plaintiff's representation that he did not file any grievances concerning his claims—which renders the affirmative defense clear on the face of the SAC—the timeline provides a separate, independent basis to conclude that Plaintiff failed to exhaust his administrative remedies before bringing this action. The attack occurred on October 11, 2019 and Plaintiff signed his initial Complaint sixteen days later, on October 27, 2019. (*See* Doc. 2). This timing precludes the possibility that Plaintiff could have exhausted his administrative remedies before filing this action; as a matter of fact and law, it simply would not have been possible for Plaintiff to do so. *See, e.g.*, *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015) ("In light of this procedure and based on the facts alleged in the Amended Complaint, it is implausible that Plaintiff was able to exhaust her administrative remedies within 10 days."); *Price v. City of New York*, No. 11-CV-6170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (dismissing an inmate action on a Rule 12(b)(6) motion and concluding that "given the timelines for the grievance procedures outlined in the DOC's regulations, it would have been impossible for [the plaintiff] to do so in the 21 days between the alleged incident and the filing of his complaint").

Plaintiff, in an effort to back away from his sworn representation and rewrite the SAC, argued that he *tried* to file grievances but was stymied by various factors and, in fact, annexed copies of documents he claims *are* the grievances he tried to file.  (*See* Opp. at 3-4, 8-9, 39-40,

43). As a primary issue, the Court need not and does not credit these fresh allegations because they contradict Plaintiff's claim that he did not file a grievance *because* his complaints were not grievable. *See, e.g.*, *Rivera v. Doe*, No. 16-CV-8809, 2018 WL 1449538, at *5 (S.D.N.Y. Feb. 26, 2018) ("The liberality with which courts examine *pro se* pleadings does not require a court to accept as true allegations that conflict with . . . prior allegations." (internal quotation marks omitted)), *adopted by* 2018 WL 1441386 (S.D.N.Y. Mar. 22, 2018); *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *3 (S.D.N.Y. Mar. 9, 2017); *Green v. Niles*, No. 11-CV-1349, 2012 WL 987473, at *5 (S.D.N.Y. Mar. 23, 2012). Even if that were not the case, the documents Plaintiff submitted—were the Court to consider them—would only bolster the Court's conclusion that Plaintiff did not exhaust his administrative remedies before filing this action. The documents include: (1) a grievance addressed to "Grievance," dated October 17, 2019 (Opp. at 8-9); (2) a grievance addressed to Royce, Russo, and "Grievance Officer," dated October 17, 2019 (*id*. at 39-40); (3) a letter addressed to "IGP Supervisor," dated October 28, 2019—that is, the day *after* signing the initial Complaint—asking about the status of his October 17, 2019 grievance (*id*. at 11); and (4) a letter addressed to CORC, dated December 19, 2019, asking how he could "get [his] Grievance decided" or, in the alternative, that the letter be construed "as [his] appeal" (*id*. at 42). These documents reveal that Plaintiff knew he had not exhausted his administrative remedies before initiating this action and reduce further the time within which Plaintiff had to complete the administrative process, thereby making less plausible Plaintiff's complaint (assuming the Court considered Plaintiff's belated and inconsistent thoughts and arguments).

In light of the foregoing, the affirmative defense of failing to comply with the PLRA is clear from the face of the SAC with respect to Plaintiff's Eighth Amendment claims for relief. These claims (*i.e.*, failure to protect and IPC placement) are, consequently, dismissed.

B.  Failure to State a Claim Upon Which Relief Can Be Granted

Even if the Court determined that Plaintiff's Eighth Amendment claims for relief could not be dismissed for failure to comply with the PLRA, both those claims and his claim under the Fourteenth Amendment, must be dismissed for failing to state a claim upon which relief can be granted. Turning to the substantive issues under Rule 12(b)(6), Plaintiff seeks relief under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). "As such, in each permutation of a claim under that law, a plaintiff must demonstrate: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *5 (S.D.N.Y. Feb. 5, 2021) (internal quotation marks omitted).

Defendants advance a variety of arguments as to why Plaintiff's claims for relief should be dismissed. The Court addresses these arguments *seriatim.*

1. Failure to Plead Failure to Protect Claims (Eighth Amendment)

Plaintiff's first claim under the Eighth Amendment alleges that Ott and Zevallos failed to protect him in the recreation yard. The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. amend. VIII, and the Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which includes making sure

14

"that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, prison officials must, *inter alia*, "take reasonable measures to guarantee the safety of inmates in their custody." *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *3 (S.D.N.Y. Sept. 30, 2015) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)); *see also Rembert v. Cheverko*, No. 12-CV-9196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014) (quoting *Farmer*, 511 U.S. at 832-33); *Randle v. Alexander*, 960 F. Supp. 2d 457, 471 (S.D.N.Y. 2013). However, while prison officials have a duty to protect prisoners from violence at the hands of other inmates, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Fair v. Weiburg*, No. 02-CV-9218, 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006) (quoting *Farmer*, 511 U.S. at 834).

For Plaintiff to state a claim against Ott or Zevallos for failing to protect him from another inmate, he must plead facts supporting two separate prongs to show that they acted with "deliberate indifference." *Edwards v. Black*, No. 20-1677, 2021 WL 1748478, at *1 (2d Cir. May 4, 2021). The first prong, the "objective prong," requires facts establishing that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (internal quotation marks omitted). In a failure to protect case, "[a] plaintiff may show a substantial risk of harm from either a specific assailant or a more general risk of harm due to the conditions at the time of the attack, such as where a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented." *Dietrich v. Cty. of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *3 (S.D.N.Y. Sept. 1, 2020) (alterations in original, internal citations and quotation marks omitted). The second prong, the "subjective prong," requires action "with a sufficiently culpable state of mind." *Morgan*, 956 F.3d at 89 (internal quotation marks omitted).

"[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Rennalls*, 2015 WL 5730332, at *3 (internal quotation marks omitted).

Even if the Court assumes that Plaintiff pled facts establishing plausibly that he was incarcerated under conditions posing a substantial risk of serious harm—which he has not done— the claims against Ott and Zevallos would still be dismissed because Plaintiff was the victim of a *surprise* attack. It is well-established that prison officials cannot be deliberately indifferent to a surprise attack. *See, e.g.*, *Carrasco v. Annucci*, No. 17-CV-9643, 2020 WL 5038561, at *3 (S.D.N.Y. Aug. 26, 2020) ("Courts routinely deny deliberate indifference claims based upon surprise attacks." (internal quotation marks omitted)); *Rennalls*, 2015 WL 5730332, at *4; *Parris v. New York State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013); *see also Charles v. Rockland Cty. Off. of the Sheriff*, No. 16-CV-166, 2019 WL 1299804, at *3 (S.D.N.Y. Mar. 21, 2019) (granting summary judgment on a Fourteenth Amendment failure to protect claim because that lesser standard "is not satisfied when the surprise attack was a surprise to everyone involved, including plaintiff"), *appeal dismissed sub nom. Charles v. Rockland Cty.*, No. 19-1041, 2019 WL 5301898 (2d Cir. Sept. 5, 2019). The fact that Plaintiff was attacked twice does not alter this conclusion. The initial attack was a surprise, the inmates were separated, and the assailant was being escorted away when he revealed a weapon, screamed, and lunged toward Plaintiff again. (SAC ¶¶ 13-22). This second attack, occurring as the inmates were being separated, is not actionable under the Eighth Amendment. *See Brown v. Chambers*, No. 92-CV-7622, 1995 WL 234681, at *4 (S.D.N.Y. Apr. 20, 1995) (explaining that officers' "failure to anticipate a" second attack after breaking up the first fight and escorting one inmate out of the housing unit "was, at most, negligence"), *aff'd sub nom. Brown v. Chamber*, 99 F.3d 402 (2d Cir. 1995).

The foregoing analysis provides a separate, independent basis for dismissing the Eighth Amendment claims against Ott and Zevallos.[4]

### 2. Failure to Plead Conditions of Confinement Claim (Eighth Amendment)

Plaintiff's second Eighth Amendment claim posits that Norton violated Plaintiff's rights by segregating him in IPC. (SAC ¶¶ 43-44). "The Constitution does not mandate comfortable prisons. Rather, [o]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Bowers v. New York Dep't of Corr. & Cmty. Supervision*, No. 17-CV-0789, 2018 WL 941740, at *3 (N.D.N.Y. Feb. 16, 2018) (alteration in original, internal quotation marks omitted). Simply placing Plaintiff in IPC is not an Eighth Amendment violation; Plaintiff must identify also a danger to his health or safety—something he has not done. *See Sostre v. McGinnis*, 442 F.2d 178, 192 (2d Cir. 1971) ("It is undisputed on this appeal that segregated confinement does not itself violate the Constitution."); *Allah v. Poole*, 506 F. Supp. 2d 174, 191 (W.D.N.Y. 2007) ("Plaintiff has not alleged living conditions in IPC that 'jeopardize[d his] health or safety' so as to give rise to an Eighth Amendment claim." (quoting *Johnson v. Hannah*, 421 F. Supp. 2d 604, 607 (W.D.N.Y. 2006) (alteration in original)); *see also Bowers*, 2018 WL 941740, at *3 (dismissing Eighth

---

[4] The allegation that the officers "jump[ed] out of the way" does not salvage these claims. Ignoring the fact that Ott escorted the assailant from behind and Zevallos stood beside Plaintiff (SAC ¶¶ 19, 21), the crux of Plaintiff's complaint is that the officers, in the middle of the recreation yard, should have put themselves in harm's way and tried to stop the attack instead of waiting for the emergency response team. (*Id*. ¶¶ 23-24). The officers' compliance with Plaintiff's expectations is of no moment; "[t]he law in this Circuit is clear that officers are under no obligation to put their own safety at risk by intervening in inmate fights." *Rodriguez v. Goins*, No. 18-CV-1380, 2020 WL 6150984, at *5 (N.D.N.Y. Aug. 17, 2020) (quoting *Velez v. City of New York*, No. 17-CV-9871, 2019 WL 3495642, at *5 (S.D.N.Y. Aug. 1, 2019)), *adopted by* 2020 WL 6146597 (N.D.N.Y. Oct. 20, 2020); *see also Leckie v. City of New York*, No. 18-CV-3917, 2021 WL 84234, at *5 (E.D.N.Y. Jan. 11, 2021) (explaining, in a failure to protect context, that "an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene" (internal quotation marks omitted)). Giving Plaintiff every conceivable inference, the Court cannot conclude that Ott or Zevallos had an opportunity to protect Plaintiff without risk to themselves.

Amendment claim based on IPC placement because plaintiff failed to allege facts about the conditions of his confinement).

As with the failure to protect claim, this analysis provides a separate, independent basis for dismissing this Eighth Amendment claim against Norton.

### 3. Failure to Plead a Procedural Due Process Claim (Fourteenth Amendment)

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (quoting *Adams v. Annucci*, No. 17-CV-3794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-8800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). For this claim, Plaintiff complains that his placement in IPC from October 21, 2019 until his release on March 11, 2020, violated his "right to remain[] in the general prison population . . . ." (SAC ¶¶ 27, 31, 44).

As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) (quoting *Perry v. McDonald,* 280 F.3d 159, 173 (2d Cir. 2001)). According to the Second Circuit, an inmate's liberty interest is implicated by prison disciplinary proceedings only if the discipline[5] imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Washington v.*

---

[5] Although IPC is "a form of administrative segregation, as opposed to disciplinary confinement," *Tavares v. Amato*, 954 F. Supp. 2d 79, 95 (N.D.N.Y. 2013), the analysis is the same, *Arce v. Walker,* 139 F.3d 329, 334-35 (2d Cir. 1998).

*Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). "Such discipline must be unusually onerous." *Aikens v. Porter*, No. 16-CV-949, 2019 WL 499993, at *4 (W.D.N.Y. Feb. 8, 2019) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999)). "Factors relevant to this determination include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Colon v. Annucci*, 344 F. Supp. 3d 612, 632 (S.D.N.Y. 2018) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)). "[T]here can be no 'violation' of procedural due process requirements unless the confinement meets the atypicality standard of *Sandin*." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).

In this case, Plaintiff's segregation in IPC lasted approximately 142 days, so his complaint falls within the "intermediate" tier of analysis (*i.e.*, segregation lasting between 101 and 305 days). *See Brown v. Venettozzi*, No. 18-CV-2628, 2019 WL 4194432, at *4 (S.D.N.Y. Sept. 4, 2019). In such cases, the length of duration in segregated housing, by itself, is insufficient to state a claim and "development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 65 (internal quotation marks omitted). This reality does not, however, excuse Plaintiff from pleading facts regarding the conditions of his IPC placement and open the doors to discovery; a viable claim still requires some explanation as to how the placement imposed "atypical and significant hardships." *See, e.g.*, *Venettozzi*, 2019 WL 4194432, at *5 (dismissing claim connected to 210-day confinement because, *inter alia*, plaintiff's allegations did not "involv[e] 'more onerous' or 'atypical' conditions of confinement"); *Falls v. Campbell*, No. 17-CV-35, 2019 WL 1255768, at *10 (S.D.N.Y. Mar. 19, 2019) (dismissing claim about 150 days in "keeplock" because the plaintiff "asserted *no* facts whatsoever that would allow the Court to assess whether" he experienced "a significant and atypical hardship" (emphasis in

original)); *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606-07 (S.D.N.Y. 2009) (dismissing claim regarding 280-day confinement because the plaintiff "failed to make any allegations detailing the conditions of his confinement"). Neither the SAC nor Plaintiff's opposition offer any allegations even suggesting that he experienced the conditions envisioned by *Sandin* and its progeny. (*See generally* SAC; Opp.).

Accordingly, because Plaintiff failed to plead the existence of a liberty interest, his claim for relief stemming from Norton's alleged violation of his Fourteenth Amendment procedural due process rights is dismissed.

### 4. Failure to Plead Personal Involvement

Plaintiff's remaining claims maintain that Royce and Russo violated his rights under the Eighth and Fourteenth Amendments by "allow[ing] and condon[ing]" unconstitutional practices. (SAC ¶¶ 32-41). With respect to  Royce, the Superintendent, Plaintiff alleges that he tolerated constitutional violations by "fail[ing] to insure that . . . officers were trained . . . in restraining inmates involved in an altercation . . . ." and permitting his IPC review "to be held by only the Committee Chairperson" instead of a three-person panel. (*Id*. ¶¶ 34-37). As for Russo, the Deputy Superintendent, Plaintiff complains only that he allowed unconstitutional conduct by "fail[ing] to insure that correctional officers were instructed . . . in restraining inmates involved in an altercation . . . ." Defendants argue that Royce and Russo must be dismissed because Plaintiff fails to plead their personal involvement. (Def. Br. at 10-13). The Court need not determine whether Plaintiff pled Royce or Russo's personal involvement because Plaintiff failed to plead any underlying claims. Without an underlying claim of a constitutional violation, no supervisory liability exists. *See Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014) ("Because we have held that there was no underlying constitutional violation, there is also no supervisory liability."); *Ortiz v. Ledbetter*,

No. 19-CV-2493, 2020 WL 2614771, at *7 (S.D.N.Y. May 22, 2020) ("[T]here is no underlying constitutional violation, so Plaintiff has not stated a claim for which the supervisory Defendants could be liable.").

The claims against Royce and Russo are, accordingly, dismissed.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In this case, the SAC is dismissed with prejudice because any amendment would be futile.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 43, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.[6]

SO ORDERED:

Dated:   White Plains, New York
          June 11, 2021

PHILIP M. HALPERN
United States District Judge

---

[6] In light of the conclusions reached herein, the Court need not and does not address Defendants' arguments regarding qualified immunity or the availability of declaratory relief. The Court likewise does not address Plaintiff's request, made in his opposition brief, for "an opportunity to provide statistical and factual documents to further support [his] allegations . . . ." (Opp. at 5).